IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 10, 2024 Session

## F.W. WHITE & ASSOCIATES, LLC, ET AL. v. JOHN R. CHILTON, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 15CH7230      Don R. Ash, Senior Judge**

_____

**No. E2023-00414-COA-R3-CV**

_____

This appeal arises from a business relationship that deteriorated.  F.W. White & Associates, LLC ("FWA"), through Fenton W. White, Jr. ("White") ("Appellees," collectively), sued John R. Chilton ("Chilton"), Centennial Village Apartments, LLC, and Centennial Village Development, LLC ("Appellants," collectively) in the Chancery Court for Anderson County ("the Trial Court") for breach of contract and quantum meruit.  Appellants, in turn, sued Appellees for slander of title based on Appellees' having recorded a document asserting an interest in the real property at issue.  Appellants also sued FWA's attorney Gregory Pratt ("Pratt"), who recorded the document.  The Trial Court granted summary judgment to Pratt based on the litigation privilege.  Following a bench trial, the Trial Court awarded FWA judgment against Appellants in the amount of $125,000.00 for money owed under a May 2008 consulting agreement ("the 2008 Agreement").  Regarding Appellants' slander of title claim, the Trial Court found that White believed he was owed money and did not act maliciously.  Appellants raise several issues on appeal.  Meanwhile, Appellees contend that the Trial Court erred in declining to award FWA its attorney's fees and costs under the 2008 Agreement.  We affirm the Trial Court.  On remand, the Trial Court is to determine and award to FWA its reasonable attorney's fees and costs incurred on appeal related to the enforcement of the 2008 Agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Gregory Brown and G. Alan Rawls, Knoxville, Tennessee, for the appellants, John R. Chilton, Centennial Village Apartments, LLC, and Centennial Village Development, LLC.

Matthew A. Grossman and Rebekah P. Harbin, Knoxville, Tennessee, for the appellees, F.W. White & Associates, LLC, and Fenton W. White, Jr.

W. Morris Kizer, Knoxville, Tennessee, for the appellee, Gregory Pratt.

## OPINION

### Background

In July 2007, FWA entered into an agreement with Centennial Village Development, LLC, under which FWA would provide consulting services. FWA was to receive a commission if certain commercial retail districts were sold to certain specified buyers. In May 2008, FWA and Centennial Village Development, LLC entered into another contract—the 2008 Agreement—which forms the basis for much of the present lawsuit. Under the 2008 Agreement, FWA was to be paid $5,000 per month as a consulting fee, cancellable on thirty days' notice. The 2008 Agreement provided that "any modification of this Agreement or additional obligation assumed by any party in connection with this Agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party."

In August 2012, White sought to modify the 2008 Agreement. In an email to White, Chilton expressed his views on White's proposal, stating in part:

> "Fenton, I have reviewed your email concerning compensation. To say the least, it was very hard to comprehend . . . [b]ut anyway I did finally finish reviewing it and here is what I propose . . . . [White] would continue with the same consulting work, for Centennial Village Apartments LLC and Centennial Village Development LLC that [he had] been doing through the final payment of the acquisition of 90% or more . . . . [T]his agreement would be contingent upon the apartment sale netting me a minimum of $5,458,507 as shown in your prepared 'Fee Exhibit B . . . .'"

White wrote: "I agree with everything except the guarantee of apartment price. . . If that is agreeable I [will] find Paul [Coleman, attorney of record for Centennial Village Development, LLC] and get this drawn up." Chilton responded: "I am not about to agree to any compensation with out some type of minimum net to me." Chilton later said that he wanted "to review the 'final documents' before agreeing to a no minimum." Centennial Village Development, LLC paid FWA $5,000.00 per month until June 2013. In September 2014, Appellants' counsel sent a letter to White terminating payments under the 2008 Agreement.

In December 2014, Chilton entered into an agreement to sell the remaining Centennial Development property for $25,000,000.00. White believed that he had not been fully compensated for his services to Appellants. In January 2015, FWA—through Pratt—recorded the Memorandum of Contract and Right to Receive Payment ("the MOC") on the apartment property at issue with the Anderson County Register of Deeds, in the amount of $600,000.00. The MOC purported that, based on an August 24, 2012 agreement, Appellees were entitled to $600,000.00 upon the sale of the property. The MOC referenced Exhibit B containing the terms of the agreement, but no such agreement was attached. Centennial placed $900,000.00 from the sale into a non-interest-bearing escrow account to secure the buyers from FWA's claims.

In June 2015, FWA sued Appellants in the Trial Court. In February 2016, FWA filed its operative second amended complaint, alleging breach of contract and quantum meruit. According to FWA, the parties modified their contractual relationship on August 24, 2012, such that FWA was entitled to the sum of $600,000.00 from the sale of Appellants' apartment complex. FWA stated, in part: "Because White has spent numerous hours over several years working under the expectation that he would be paid, it would be unjust [and] inequitable for Defendants to retain the benefits conferred without fully compensating White." In April 2016, Appellants filed an answer, counterclaim, and third-party complaint against Appellees and Pratt asserting slander of title among other things. In June 2016, Appellants filed an amended counterclaim and third-party complaint. Appellants alleged that "White, FWA and Pratt had no factual or legal basis for filing and recording the Cloud on Title so as to cloud Centennial Village Apartments' title to the Apartment Property."

In November 2018, Pratt filed an answer seeking dismissal of the claims against him based on the litigation privilege. Pratt later filed a motion for summary judgment, which the Trial Court granted in April 2022. In its order granting Pratt's motion for summary judgment, the Trial Court stated, in part:

> In his Motion for Summary Judgment, Pratt raises the litigation privilege as a potential defense for all of Defendants' claims against him, as he was the attorney of record for F.W. White & Associates for all relevant time periods in this case. Defendants seem to argue Mr. Pratt personally recorded the MOC, which resulted in significant damages to the Defendants in defending the title.

> Regarding the litigation privilege, the Court finds the signing of the MOC and the OLA [Open Listing Agreement] falls under conduct not communications. All claims against Mr. Pratt concern his involvement in the signing of the MOC and the results which came after. The Court must

analyze Mr. Pratt's conduct with the factors set out in *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010). To address whether Mr. Pratt was (1) acting in the capacity of counsel for a client when the conduct occurred, the Court finds there is no proof to suggest otherwise as he signed both agreements as the Attorney for F.W. White and Associates (MOC) or on behalf of The Pratt Law Firm (OLA). The Court does not find Mr. Pratt was acting personally or for his own self-interest (2) in entering into these agreements. Mr. Pratt's signing these agreements is related to this litigation (3) as the MOC he signed is about the property at issue between Plaintiffs and Defendants. Finally, (4) the Court finds there is a real nexus between Mr. Pratt's conduct and the litigation under consideration because he represented the Plaintiff when the MOC was entered into.

After considering the relevant factors with Mr. Pratt's conduct and the allegations against him, the Court concludes the litigation privilege applies to bar all of Defendants' claims against Mr. Pratt, Third-Party Defendant. Accordingly, Defendants' Third-Party claims against Greg Pratt for Slander of Title, Quiet Title, Tortious Interference with a Contract and Business Relations, Breach of Fiduciary Duty and Conspiracy to Breach are hereby DISMISSED with prejudice.

The remaining claims between the remaining parties proceeded to a November 2022 bench trial. In December 2022, the Trial Court entered its judgment. The Trial Court rejected FWA's theory that FWA was owed $600,000.00 from the sale of the property. The Trial Court also rejected FWA's quantum meruit claim. However, the Trial Court awarded FWA a judgment against Defendants in the amount of $75,000.00 for missed payments under the 2008 Agreement. The Trial Court ordered that the MOC be declared void and that Chilton was entitled to the $900,000.00 in escrow. Finally, the Trial Court declined to award either side attorney's fees and costs. In its order, the Trial Court stated, in part:

22. Chilton testified a meeting occurred on or around August 24, 2012 between Mr. White, Mr. Chilton, and attorney Paul Coleman, in which he discussed paying White $200,000.00 from the proceeds of the commercial property sale, and/or $100,000.00 from the first payment to Chilton if the purchase of depreciation is in the form of an installment note, and/or $300,000 to be paid from the final payment of the acquisition of 90% or more of Centennial Village Apartments or Centennial Village Properties I, LLC.
23. Paul Coleman testified, after Mr. White left the meeting, Chilton told Coleman he would never agree to the proposed agreement and told Coleman

not to draw up the discussed agreement. This conversation was never disclosed to Mr. White.

24. Chilton testified White provided him with a final package concerning the apartment property on August 30, 2012, so it could be sent out.

25. In September 2014, Counsel for Centennial Village Development wrote a letter to White to cease payment under the 2008 Consulting Agreement.

26. Centennial Village Development continued paying F.W. White & Associates the monthly consulting fee of $5,000.00 until June 2013.

## 2013 Bank scheme

27. On March 13, 2013, Centennial Village Development (Chilton) and White entered into an agreement whereby Centennial (Chilton) would sell 11 acres of the original property to White for approximately $750,000.00. White borrowed $382,000.00 from First State Financial, Inc. ("FWA Loan"), using the property as collateral. The borrowed money was paid to Chilton and he paid the interest payments on another loan.

28. John Davenport (Banker) testified he agreed to the above scheme for White to borrow the money so Chilton could pay on the large apartment loan.

29. There was also a buyback agreement whereby Chilton could buy the property back for assumption of the $382,000.00 loan. This took place and White was compensated two payments of $10,000.00 for his efforts. There were no responsibilities White owed to the Bank.

30. The 11-acre property was transferred from White back to Chilton by a quitclaim deed dated November 6, 2014.

31. The maturity date for the FWA Loan was February 28, 2014.

32. Chilton testified First State called his notes due when White was late in turning over financial statements, even though the two are unrelated. Initially First State agreed to extend the Loan to August 28, 2014, but after FWA failed to timely submit the required financial documents, First State refused to extend the Loan past April 7, 2014.

33. After April 7, 2014, Centennial Village Development defaulted on the Loan and First State sent several notices of foreclosure.

34. Chilton testified he negotiated a resolution with First Bank, in order to avoid foreclosure, whereby First State would release Chilton and White from their personal guarantees if Chilton transferred the two properties to First State's affiliate by a Deed of Trust in Lieu of Foreclosure.

## Cloud on Title

35. On January 5, 2015, White recorded a Lien and Memorandum of Contract and Right to Receive Payment on the apartment property with the Anderson County Register of Deeds in the amount of $600,000.00 (the "Cloud on Title").

36. Attorney Greg Pratt testified no writing ("Exhibit B") was attached to the Memorandum of Contract as referenced in the Memorandum. He further testified this was recorded as a Lien against Mr. Chilton's property.

37. The original purchase price for the apartment complex was $25,000,000.00, based on the first Agreement for Purchase and Sale and Joint Escrow Instructions dated December 12, 2014. After some discussion between Chilton and the buyer, the purchase price was reduced by $625,000.00, making the agreed final purchase price $24,375,000.00.

38. A Seller's Statement for the apartment sale, dated July 22, 2015, reflects $900,000.00 in escrow was charged to resolve "Fenton White Litigation".

***

**Second Amended Complaint**

The Court finds the parties are bound by the 2008 Agreement, which obligates the payment of $5,000.00 per month until the letter terminating the contract in September 2014. The Court further declares there is no quasi contract based on the email correspondence between Counsel in August 2012; therefore, the terms of the 2008 Agreement were never modified. There was clearly not a meeting of the minds concerning White's proposed modification of the terms of compensation as there is no proof Chilton ever accepted White's proposed terms.

The Court finds White was compensated the $5,000.00 monthly retainer payment until June 2013, as referenced by the September 18, 2014 letter from Chilton's Counsel. Because there was no modification to the 2008 Consulting Agreement, and no meeting of the minds concerning the 2012 proposed modifications, the Court finds the Defendants did not breach the contract concerning the properties.

Count III of the Second Amended Complaint is a claim for quantum meruit in the event the Court does not find the 2012 correspondence constitutes an enforceable contract. The Court finds the 2008 Consulting Agreement is the relevant and enforceable contract governing these parties' agreement regarding services and compensation. The Court further finds the Defendant has not been unjustly enriched based on Plaintiff's argument. Considering both elements for a claim for quantum meruit based on unjust enrichment are not met (i.e. when no contract exists between the parties and

-6-

when the defendant would be unjustly enriched), the Court declines to find Plaintiff is due additional compensation based on the doctrine of quantum meruit or quasi contract.

The Court finds White was paid $5,000.00 monthly until June 2013, but the letter terminating his employment agreement was not sent until September 2014 (an approximate 15-month lapse). Accordingly, the Court hereby awards Fenton White a judgment in the amount of $75,000.00 ($5,000.00 x 15 months) against John Chilton, Centennial Village Developments, and Centennial Village Apartments, which represents White's unpaid balance under the 2008 Consulting Agreement.

## Counterclaim

### *Slander of Title*

One issue for the Court to decide is whether White lawfully recorded the Cloud on Title in 2015. The Court finds this was not a malicious act on Mr. White's part, as he believed he was owed the money he sought based on their agreement and the actions of Chilton.

Defendant claims White made multiple false statements in recording the Cloud on Title which reduced the purchase price of the apartment complex by $625,000.00 and this is the basis for their claim for slander. The Court finds there was no direct proof the Cloud on Title was the basis for the purchase price reduction of the apartment complex. Eventually, there was a sale contract entered and $900,000.00 put into an escrow account for White-related litigation.

Plaintiff offered several cases in which liens have been recorded in connection with judicial proceedings and this has been considered absolutely privileged. *See Desgranges v. Meyer*, No. E2003-02006-COA-R3-CV, 2004 WL 1056603 (Tenn. Ct. App. Dec. 4, 2003); citing *Donahoe Instr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 369 S.E.2d 857, 4 Va. Law Rep. 3040 (1988); *Frank Pisano & Assoc. v. Taggart*, 29 Cal. App. 3d 1, 105 Cal. Rptr. 414 (1972). The Court declines to find White's actions in recording the Lien are absolutely privileged because the Lien was recorded in January 2015 and the Complaint was filed six months later in June 2015. The two are connected in many ways, but they were not filed in conjunction with one another.

One of the essential elements for a claim under slander of title is for the defendant to have acted maliciously. *Finch v. Raymer*, No. W2012-00974-COA-R3CV-2013 WL 1896323 at *15 (Tenn. Ct. App. May 6, 2013). The Court finds White did not act maliciously in recording the Cloud on

Title, and as such Count I of Defendants' Counterclaim is hereby DISMISSED with prejudice.

*Quiet Title*

Count II of the Counterclaim seeks for the Cloud on Title to be quieted and a judgment rendered in Defendants' favor concerning the Property at issue in the MOC. The Court finds Defendants' action to quiet title is a remedy, and not a separate cause of action. *Goryoka v. Quicken Loan, Inc.*, 519 Fed. Appx. 926 (U.S. Ct. App. Mar. 18, 2013).

On January 8, 2015, F.W. White & Associates, LLC, and Fenton White filed a "Memorandum of Contract and Right to Receive Payment" against Centennial Village Apartments, LLC, Centennial Village Development, LLC, and John Chilton. In this Lien, White cites to an agreement for payment of $600,000.00 as evidenced by a writing "attached as Exhibit B". A review of the document shows there is no Exhibit B. Because of this failure, the Court determines this Lien is invalid and should be stricken. Any Cloud from this title is hereby removed. Defendants' claim for quiet title is GRANTED as to Lien No. 15000163 (Book 1612, Pages 1083-1087), Anderson County, Tennessee, Register of Deeds.

\*\*\*

## Conclusion

Based on the arguments of the parties, the relevant pleadings, and all applicable authority, the Court DISMISSES with prejudice Counts I and II of Plaintiffs' Second Amended Complaint regarding breach of contract. Representing the balance owed to Plaintiff under the 2008 Consulting Agreement, the Court awards Fenton White a judgment against John Chilton in the amount of $75,000.00, for which execution may issue.

The Court DISMISSES with prejudice Defendants' Counterclaims (Counts I, III, IV, V, VI, VII and VIII). As to Count II to quiet title, the Court orders the Lien filed by Fenton White is hereby declared void (Lien No. 15000163 (Book 1612, Pages 1083-1087), Anderson County, Tennessee, Register of Deeds). Mr. Chilton is to receive the $900,000.00 sum currently being held in escrow by Commonwealth Land Title Insurance Company.

Plaintiff requested an award of attorney's fees based on the 2008 Consulting Agreement. The Court finds there was not sufficient proof to find this appropriate. Each party is to be responsible for his own attorney's fees . . . .

(Record citations and footnote omitted).

Appellants filed a motion to alter or amend, as did FWA. In February 2023, the Trial Court entered an order denying Appellants' motion while granting FWA's request for an additional $50,000.00 to account for other missed payments under the 2008 Agreement, bringing judgment for FWA to $125,000.00. In its order on post-trial motions, the Trial Court stated, in part:

Defendant seeks to alter or amend the Court's Final Order entered December 13, 2022. Specifically, Defendant suggests the Court should:
1) Remove the $75,000 award to Plaintiff; or
2) Alternatively, revise the award to Plaintiff to be set off by the $20,000 overpayments to White while he was under contract with Evanston Financial Corporation.

Defendant argues Trial Exhibit #10 (August 24, 2012 Email) showing a potential renegotiation of the 2008 Consulting Agreement (Trial Exhibit #3) contains a clause which terminates said consulting agreement. The Court noted the 2008 Consulting Agreement states "any modification of this Agreement or additional obligation assumed by any party in connection with this Agreement shall be binding only if evidenced in writing signed by each party or an authorized agent of each party." Defendant also argues Trial Exhibit #10 is not a contract, is not enforceable and violates the written notice requirement of Trial Exhibit #3, except in regard to Defendant's termination of the contract. The Court is not persuaded by Defendant's argument [that] Trial Exhibit #10 serves as notice of termination of the 2008 Consulting Agreement. Defendant's Motion to Alter or Amend is DENIED as to his request for the Court to remove the $75,000 award in damages to Plaintiff.

Alternatively, Defendant argues he should not be required to pay $20,000 of the withheld contract funds because Plaintiff and Evanston Financial Corporation entered into an agreement in which Plaintiff would receive 1% of the Note amount and further agreed "that with respect to the Project Loan, it will not accept any compensation from any other party directly or indirectly." The Court finds Defendant is arguing he should get the benefit of a contract he is not a party to. The Court does not agree with Defendant's position, accordingly Defendant's Motion to Alter or Amend is DENIED as to the request for a $20,000 offset in Plaintiff's award.

For the first time, Defendant orally complains the Court granted relief, namely enforcing the May 1, 2008 Consulting Agreement when its enforcement was not alternatively pled in Plaintiff's Second Amended Complaint. In response, Plaintiff cites to his Complaint's prayer for relief

which states, "That the Court specifically enforce the terms of the agreements". Plaintiff further argues his Complaint should be liberally construed. The Court finds the 2008 Consulting Agreement and its terms were thoroughly discussed at the trial in this case, and the Defendant argued its enforceability, in fact for some time frame, insisted at the terms set out in Trial Exhibit #10. To the extent Defendant's argument is a new request to alter or amend, Defendant's motion is denied.

***

Based on the Court's previous damages award to Plaintiff, Plaintiff was awarded his $5,000 contractual amount for the months he was not paid between June 2013 and September 2014 (15 months x $5,000 = $75,000). The Court did not include the nine (9) months between March-November 2010 which the proof at trial shows Plaintiff was not paid the $5,000 monthly fee. The Court finds the 2008 Consulting Agreement is separate and apart from the FHA Agreement between Plaintiff and Evanston; therefore, the monthly payments should not have ceased under the 2008 Consulting Agreement.

The Court also agrees with Plaintiff's position the September 2014 letter provided notice of the termination of the 2008 Consulting Agreement, which was "cancellable on 30 days notice." This means Plaintiff's damages award should have been through October 2014, not September 2014. Accordingly, the Court GRANTS Plaintiff's Motion to Alter or Amend as to the additional $5,000 monthly payment representing October 2014 and the additional $45,000 representing the nine (9) months Plaintiff was not paid based on the FHA Agreement. Plaintiff's total damages award is hereby revised from $75,000 to $125,000.00, against Defendants John R. Chilton, Centennial Village Apartments, LLC, and Centennial Village Development, LLC, for which execution may issue.

Regarding Plaintiff's request for attorney fees under the 2008 Consulting Agreement, the Court finds the amounts are too speculative as to which items apply to which claim and it is too difficult to ascertain a certain amount Plaintiff prevailed on based on his Fee Applications submitted. Plaintiff's Motion to Alter or Amend as to attorney fees is DENIED.

(Some record citations omitted; footnote omitted). Appellants timely appealed to this Court.

## Discussion

Although not stated exactly as such, Appellants raise the following issues on appeal: 1) whether the Trial Court erred in granting summary judgment to Pratt based on the litigation privilege; 2) whether the Trial Court erred in dismissing Appellants' slander of title claim against Appellees; 3) whether the Trial Court erred in declining to award damages to Appellants for loss of the use of $900,000.00 held in escrow since 2015; and 4) whether the Trial Court erred in awarding judgment to FWA notwithstanding the dismissal of its claims with prejudice, FWA's failure to demand said judgment and litigate the propriety thereof, and evidence regarding notice of termination of the 2008 Agreement. Appellees raise the separate issues of 1) whether Appellants waived any evidentiary issues by failing to include them in their statement of issues; 2) whether the Trial Court erred in ruling that judicial immunity did not apply to Appellants' slander of title claim; 3) whether the Trial Court erred in declining to award FWA its attorney's fees and costs pursuant to the 2008 Agreement; and 4) whether FWA should be awarded its attorney's fees and costs incurred on appeal.[1] Finally, Pratt raises a separate issue of whether the Trial Court erred in finding that he testified that the MOC was recorded as a lien.

Multiple standards of review are implicated in this matter. First, to the extent this matter was resolved by a bench trial, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). With respect to credibility determinations, the Tennessee Supreme Court has instructed:

> When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence to be clear and

---

[1] Appellees also filed a motion to strike Appellants' reply brief on grounds that Appellants exceeded the word count under Tenn. R. App. P. 30(e) and inappropriately tried to raise new issues. Appellants filed a response in opposition, requesting leave to exceed the word count. We will not consider any new issues raised in Appellants' reply brief. With that restriction, we deny Appellees' motion to strike and grant Appellants leave to exceed the word count.

convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn. 2013), (citing *In re Bernard I*, 319 S.W.3d 586, 596-97 (Tenn. 2010)), *cert. denied*, [571 U.S. 894], 134 S.Ct. 224, 187 L.Ed.2d 167 (2013).

*Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

This matter was also partly decided by summary judgment. Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for

-12-

trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Certain issues on appeal implicate the abuse of discretion standard. In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus,

it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25. A trial court's decision on a motion to alter or amend is reviewed for abuse of discretion. *Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015).

We first address whether the Trial Court erred in granting summary judgment to Pratt based on the litigation privilege. This Court has previously discussed the litigation privilege as follows:

> This state further recognizes that "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged and therefore cannot be used as a basis for a libel action for damages." *Jones v. Trice* [210 Tenn. 535], 360 S.W.2d 48, 50 (Tenn. 1962); *see also Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 159 (Tenn. Ct. App. 1997). This is true even if the statements are "known to be false or even malicious." *Jones*, 360 S.W.2d at 50 (citing *Hayslip v. Wellford* [195 Tenn. 621], 263 S.W.2d 136 (Tenn. 1953)). The policy underlying this rule is
>
>> that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby.
>
> *Jones*, 360 S.W.2d at 51. *Myers* also expressly stands for the proposition that "communications preliminary to proposed or pending litigation" are absolutely privileged. *Myers*, 959 S.W.[2d] at 161 (quoting Restatement of Torts § 587).

*Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *7-8 (Tenn. Ct. App. March 31, 2008), *no appl. perm. appeal filed*. This Court has also discussed when the litigation privilege applies:

> [T]he litigation privilege in Tennessee applies to an attorney's conduct prior to the commencement of litigation if (1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self interest, (3) the conduct was related to the subject matter of proposed litigation that was under serious consideration by the attorney, and (4) there

was a real nexus between the attorney's conduct and litigation under consideration.

*Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010) (footnote omitted).

In their brief, Appellants argue that the second element—that of good faith—is at issue. Appellants assert that the Trial Court skipped this critical element of the litigation privilege in its analysis. Beyond that, Appellants contend that they created a genuine issue of material fact as to Pratt's good faith or lack thereof. Appellants point to the Declaration of Christopher W. Martin ("Martin"), an attorney with commercial and real estate expertise, who opined among other things that "[a]ny attorney trained and licensed in the issuance of title insurance, such as Greg Pratt, would recognize these key facts . . . that would make this [MOC] a cloud on the title of the property described in the document." Martin stated further that "it was a breach of the standard of care for Mr. Pratt to execute [the MOC] without attaching a written contract signed by the owner of the property, or to facilitate the creation, execution, and/or recording of this document."

Meanwhile, Pratt submitted an affidavit explaining his reasons for recording the MOC, stating in relevant part:

> 19. I determined that F.W. White & Associates had a good faith claim for breach of contract and/or quantum meruit against Centennial Village Apartments, LLC, Centennial Village Development, LLC, and/or John R. Chilton for services performed relative to the property subject to the Memorandum of Contract and Right to Receive Payment (MOC), a copy of which is attached hereto as Exhibit B.
>
> 20. I also determined that litigation over the breach of contract/quantum meruit claim was substantially likely to ensue.
>
> 21. At the request of F.W. White & Associates, LLC, the MOC was then prepared by Pratt Aycock.
>
> ***
>
> 25. The MOC was to be recorded for the purposes of protecting and enforcing F.W. White & Associates, LLC's rights and interest in the property.

While the Trial Court did not explicitly use the term "good faith," the Trial Court did set out the *Unarco* elements and applied them to the facts of this case. It is sufficiently clear from the Trial Court's order that it considered each element of the analysis and found

-16-

Pratt had acted in good faith. The undisputed material facts support this determination. Appellants appear to conflate an erroneous or unsuccessful act by an attorney with bad faith under the *Unarco* test. The Trial Court rejected FWA's claim to $600,000.00 from the sale of the property and restored to Chilton $900,000.00 in escrow. However, that the MOC did not in the end withstand scrutiny does not automatically mean that Pratt recorded it in bad faith. The rationale of the litigation privilege is to protect the "freedom to institute an action, or defend, or participate therein . . . ." *Phillips*, 2008 WL 836161, at *8 (quoting *Jones v. Trice*, 360 S.W.2d 48, 51 (Tenn. 1962)). The privilege is necessarily broad in scope. It is not limited to legal undertakings that bring fully successful results. An ultimately unsuccessful legal step taken by an attorney does not necessarily equate to bad faith for purposes of the litigation privilege. According to Pratt's affidavit, he consulted with his client, assessed FWA's potential claims against Appellants, and consequently recorded the MOC. Nothing in Martin's Declaration contradicts that. Martin's opinion that, from a professional standpoint, the MOC ought never have been executed does not create a genuine issue of material fact as to Pratt's good faith. On the contrary, Pratt's unrebutted explanation of his motives and actions in recording the MOC show that he acted in good faith on behalf of his client. With respect to the other *Unarco* elements, Pratt was acting in the capacity of counsel for his client when the conduct occurred; the conduct was related to the subject matter of proposed litigation then under serious consideration by Pratt; and there was a real nexus between Pratt's conduct and the litigation under consideration. Thus, Pratt was entitled to judgment as a matter of law based on the litigation privilege. We affirm the Trial Court's grant of summary judgment to Pratt.

For his part, Pratt raises a separate issue of whether the Trial Court erred in finding that he testified the MOC was recorded as a lien. However, the Trial Court's characterization of Pratt's testimony and the MOC was not essential to the Trial Court's judgment. Therefore, even if the Trial Court erred on this specific factual finding, it was harmless error, as our considering the record as a whole shows that it did not "more probably than not [affect] the judgment or . . . result in prejudice to the judicial process." Tenn. R. App. P. 36(b). We therefore decline Pratt's request to reverse the Trial Court on this individual factual finding.

We next address whether the Trial Court erred in dismissing Appellants' slander of title claim against Appellees. Regarding claims for slander of title, this Court explained in *Brooks v. Lambert*:

> Slander or libel of title was first recognized as a cause of action in *Smith v. Gernt*, 2 Tenn. Civ.App. 65, 79-80 (1911). *Harmon v. Shell*, No. 01-A-01-9211-CH-00451, 1994 WL 148663 (Tenn. App. M.S. Apr. 27, 1994). To establish a successful claim for slander of title, a plaintiff must prove:

(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss. (citations omitted).

*Id.* at \*4. Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action. *Id.* (citing *Gernt*, 2 Tenn. Civ. App. at 79-80). To assert this cause of action, the plaintiff must allege "malice . . . in express terms or [by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]" *Waterhouse v. McPheeters*, 176 Tenn. 666, 669, 145 S.W.2d 766, 767 (1940). A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title. *Ezell v. Graves*, 807 S.W.2d 700, 704 (Tenn. App. 1990).

*Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). "The question of whether [the defendants] acted in good faith is a question of fact to be resolved by the fact finder from the evidence adduced at trial." *Phillips*, 2008 WL 836161, at \*9.

Appellants argue that "[a]t a minimum, the evidence shows that Mr. White, on behalf of FWA and with the aid of Mr. Pratt, exhibited reckless disregard as to whether the statements in the MOC were true and knowing that the MOC would cloud the Defendant-Appellants' title." Appellants cite *Holland v. Sullivan*, No. M2016-00538-COA-R3-CV, 2017 WL 3917142 (Tenn. Ct. App. Sept. 7, 2017), *no appl. perm. appeal filed*, in which the Sullivans were found to have made the intentional decision "to deprive Mr. Holland of his security interest in the vehicles after Mr. Holland attempted to possess the BMW. They accomplished their goal by obtaining duplicate titles based on the false representations that the titles were lost and then by using the duplicate titles to sell the BMW." *Id.* at \*11. In *Holland*, as found by the trial court and affirmed by this Court, "Defendants acted maliciously because they knew Plaintiff was attempting to gain possession of both vehicles. The BMW was in their garage and was not revealed to the tow truck driver. After Mr. and Mrs. Sullivan knew Mr. Holland was trying to get the vehicles back, they both went to county court clerk and applied for duplicate titles." *Id.* at \*10. We affirmed the trial court's finding of slander of title. *Id.*

Appellants also refer to the expert testimony of Martin, who was slated to render an opinion regarding malice at trial—namely, that recording the MOC was an improper act. Appellees objected, the objection was sustained, and Appellants made an offer of proof. Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion.

*Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). However, Appellants did not identify any evidentiary issues in their principal brief's statement of the issues. Appellants say in a footnote that "the Trial Court's evidentiary ruling was in error . . . ." In response, Appellees argue that any evidentiary issues that Appellants attempt to raise are waived. "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Indeed, Appellants' failure to include any evidentiary issues in their statement of issues subjects their evidentiary arguments to waiver. However, even considering the issue, Appellants fail to articulate how the Trial Court abused its discretion in excluding the evidence. We find that the Trial Court's decision to exclude the evidence was properly supported by the evidence in the record; was based on the most appropriate legal principles applicable to the decision; and was an acceptable alternative disposition. We find no abuse of discretion in the Trial Court's exclusion of the evidence. Moreover, even if the evidence were admitted, it would not affect the outcome. Respectfully, Martin's opinion is not probative to White's motivations and the specific circumstances of White's dealings with Chilton.

Regarding his motivations for having the MOC recorded, White testified below as follows in part:

Q. How did this document come into existence?
A. It was something that my attorney at the time and I discussed.
Q. And who was your attorney at the time?
A. Greg Pratt.
Q. Okay. And did you ask him to record this in the registry?
A. Yes.
Q. And you knew that this was being recorded when it happened, did you not?
A. Yes.
Q. Now, what was -- did you see it before it was recorded?
A. I think I saw a digital copy. I was out of town at the time.
Q. Okay. But you saw it. It was e-mailed to you or something?
A. I think so.
Q. And did you read it?
A. I'm sure I read it.
Q. Did you create any improvements to the real property that's in the exhibit to this document?
A. Yes.
Q. What improvements did you do?
A. Well, when I got involved with the property, it was a bare piece of ground.

Q. Did you -- were you a general contractor?
A. No. I was a construction manager later on.
Q. Were you a subcontractor?
A. No.
Q. Are you licensed as a contractor?
A. No.
Q. Did you build anything?
A. No.
Q. Your purpose at the time you recorded this on the 29th day of -- oh, I guess it was actually recorded on January 9th. Correct?
A. Whatever the day is that's on there, I agree, whatever the date is.
Q. January 8th, 2015, you were aware that John Chilton had a contract for the sale of that property.
A. No, not at that time.
Q. Wasn't the purpose in recording this to make sure that everybody out there who might buy this knew that you wanted --
A. Knew that he owed me money?
Q. -- $600,000?
A. Knew that he had an agreement with me? Yes.
Q. So your purpose was to publish this to the world?
A. Right.
Q. And tie it to the title on these apartments?
A. Yes. I mean, yes.

The question of whether White acted maliciously in having the MOC recorded was a question of fact. The Trial Court had the opportunity to see and hear the witnesses testify. The Trial Court was thus in a better position to assess the parties' relative credibility. The Trial Court clearly credited White's testimony, and we extend considerable deference to a trial court's credibility assessments. There is no clear and convincing evidence that would serve to overturn the Trial Court's implicit credibility determination in this matter. As found by the Trial Court, White believed that he was owed money by Appellants, including money from the sale of the property at issue. The evidence does not preponderate against the Trial Court's finding that White did not act maliciously.[2] We affirm on this issue.

---

[2] Even though Appellees prevail on the issue of malice, they raise the doctrine of judicial immunity as an additional defense. The Tennessee Supreme Court has stated the general rule that "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged, and therefore cannot be used as a basis for a libel action for damages." *Jones*, 360 S.W.2d at 50. The Trial Court declined to find judicial immunity, stating that the "the Lien was recorded in January 2015 and the Complaint was filed six months later in June 2015. The two are connected in many ways, but they were not filed in conjunction with one another." Appellants say that Appellees waited too late to assert this defense, only raising it at the end of trial. We agree, and we decline to find that judicial immunity applies.

-20-

We next address whether the Trial Court erred in declining to award damages to Appellants for the loss of use of $900,000.00 held in escrow account since 2015. At trial, Chilton testified that he had done research on the service Zillow concerning certain investment properties. He said that he could have invested in these properties had his money not been tied up in escrow. Appellants also point to a remark the Trial Court made that Chilton had lost some two or three million dollars because the money was tied up in escrow. Appellees objected to the Zillow data below. The Trial Court sustained the objection but allowed Appellants to make an offer of proof. Appellees again argue that Appellants have waived any evidentiary issues for failure to raise them properly. Appellees argue further that the Zillow evidence is too speculative, saying that Chilton never owned these properties. Once more, Appellants failed to identify any evidentiary issues in their statement of issues. In any event, even considering the issue, we agree with Appellees that the evidence is highly speculative and unreliable. The Trial Court's decision to exclude the evidence was properly supported by the evidence in the record; was based on the most appropriate legal principles applicable to the decision; and was an acceptable alternative disposition. In short, the Trial Court did not abuse its discretion. As for the Trial Court's remarks about Chilton's likely losses, these did not form part of the rationale for the Trial Court's judgment. They are immaterial. We affirm on this issue.

The final issue of Appellants we address is whether the Trial Court erred in awarding judgment to FWA notwithstanding the dismissal of its claims with prejudice, FWA's failure to demand said judgment and litigate the propriety thereof, and evidence regarding notice of termination of the 2008 Agreement. According to Appellants, FWA never pled for the relief it obtained from the Trial Court, and in effect that Appellants were surprised by the judgment. In support of their argument, Appellants cite the proposition that "the rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings." *Fidelity-Phenix Fire Ins. Co. v. Jackson*, 181 S.W.2d 625, 629 (Tenn. 1944). Appellants also cite Tenn. R. Civ. P. 54.03, which provides that a court shall not give a successful party relief where "the opposing party had no opportunity to assert defenses to such relief." In response, Appellees point out that the complaint cited the $5,000 per month payments to FWA beginning in 2008, and that it sought to enforce "the agreements"—which would include the 2008 Agreement. Appellees argue in the alternative that the issue was tried by implied consent.

Regarding how detailed a complaint must be, our Supreme Court has stated that "Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citation omitted). As for when an issue may be found to have been tried by implied consent, this Court has explained:

Generally speaking, trial by implied consent will be found when the party opposed to the amendment knew or reasonably should have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby. *Id.* As the Tennessee Supreme Court stated in *Zack Cheek Builders, Inc. v. McLeod* [597 S.W.2d 888 (Tenn. 1980)]:

> "Implied consent . . . is much more difficult to establish (than express consent) and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend himself produced evidence bearing on the new issue."

> *Id.* (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 1493, at 462-63 (1971)). Trial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue. *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. App. 1995) (citations omitted).

*McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997). A trial court's determination with respect to implied consent "must be upheld unless there has been an abuse of discretion." *Hobbs v. Hobbs*, 987 S.W.2d 844, 847 (Tenn. Ct. App. 1998).

With respect to whether FWA sufficiently pled breach of contract under the 2008 Agreement, the second amended complaint referred to the payments made under the 2008 Agreement and sought enforcement of "the agreements." Under the liberal notice pleading standard in Tennessee, we find this was sufficient to put Appellants on notice that the enforcement of the 2008 Agreement would be at issue in this lawsuit. That is, Appellants should not have been surprised that FWA would pursue missed payments under the 2008 Agreement. However, even if the issue was insufficiently pled, the Trial Court implicitly found that the issue had been tried by implied consent, stating that "the 2008 Consulting Agreement and its terms were thoroughly discussed at the trial in this case, and the Defendant argued its enforceability, in fact for some time frame, insisted at the terms set out in Trial Exhibit #10." The 2008 Agreement was, in fact, invoked repeatedly at trial. Indeed, the 2008 Agreement formed a basis for Appellants' defense against FWA's quantum meruit claim. The contract clearly was front and center at trial. Thus, the Trial Court's finding that enforcement of the 2008 Agreement was tried by implied consent was

properly supported by the evidence in the record; was based on the most appropriate legal principles applicable to the decision; and was an acceptable alternative disposition. The Trial Court did not abuse its discretion in finding implied consent.

Appellants argue further that attorney Paul Coleman's delivery of an August 22, 2012 e-mail to White served as notice of termination of the 2008 Agreement, and that the Trial Court erred in awarding White $125,000.00 for missed payments because Chilton was not required to make monthly payments beyond November 2012. However, the August 2012 exchanges between White and Chilton were inconclusive. The 2008 Agreement was not terminated until September 2014, when Appellants' counsel sent White a letter informing him of the termination. The Trial Court committed no reversible error on this issue. We affirm the Trial Court's award to FWA of judgment in the amount of $125,000.00 against Appellants for missed payments under the 2008 Agreement.

We next address Appellees' issues concerning attorney's fees incurred below and on appeal. "Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Generally speaking, "[t]he trial court is vested with wide discretion in matters of the allowance of attorney's fees, and this Court will not interfere except upon a showing of an abuse of that discretion." *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987). However, "our courts do not have discretion to deny an award of fees mandated by a valid and enforceable agreement between the parties . . . ." *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 (Tenn. 2017).

The attorney's fee provision in the 2008 Agreement reads: "In the event either party breaches any obligation required to be performed under this Agreement, the breaching party shall be liable for all costs incurred by the non-breaching party, including reasonable attorney fees and court costs, in the enforcement of the obligations under this Agreement." The Trial Court denied FWA's request for attorney's fees under the 2008 Agreement on grounds that "the amounts are too speculative as to which items apply to which claim and it is too difficult to ascertain a certain amount Plaintiff prevailed on based on his Fee Applications submitted." This Court has previously addressed a scenario in which there was a question about the divisibility of attorney's fees when multiple claims were at issue:

> [W]e consider Middleburg's argument that Gresham Smith was not the prevailing party because Middleburg was successful on the unjust enrichment and Prompt Pay Act claims. To be a prevailing party in a lawsuit, one "need not attain complete success on the merits." *Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010). Instead, "a prevailing party

-23-

is one who has succeeded 'on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the lawsuit.' " *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, Gresham Smith succeeded on the merits of its breach of contract claim and was awarded the remuneration it sought—payment of the invoices. We view this as a success on the merits on a significant issue in the litigation.

\*\*\*

Middleburg chiefly complained that Gresham Smith's fees related to the unjust enrichment and Prompt Pay Act claims should be excluded and that other fees were duplicative or excessive. However, Middleburg did not provide the trial court with the corresponding amount of fees it believed should have been excluded from the award, and the trial court declined to "sift through" Gresham Smith's time entries and "guess at the basis for each objection." In determining that all of Gresham Smith's fees were reasonable, the trial court cited *G.T. Issa Construction, LLC v. Blalock*, E2020-00853-COA-R3-CV, 2021 WL 5496593, at \*8 (Tenn. Ct. App. Nov. 23, 2021). In *G.T. Issa Construction*, the plaintiff pursued four causes of action arising out of a purchase and sale agreement and prevailed on only two of the claims. *G.T. Issa Const.*, WL 5496593, at \*8. Nevertheless, this Court noted that there was a single contract at issue and determined that "[a]ll of [p]laintiff's claims were 'based on or related to' the Agreement, arose out of a common core of facts, or were based on related legal theories" and that the plaintiff was entitled to fees incurred in prosecuting all four claims. *Id.* at \*9 (quoting *Crescent Sock Co. v. Yoe*, No. E2015-00948-COA-R3-CV, 2016 WL 3619358, at \*8 (Tenn. Ct. App. May 25, 2016)). The same is true here. All three of Gresham Smith's claims and all of Middleburg's defenses arose out of or were related to the Consultant Agreement the parties executed. Likewise, the alternate legal theories Gresham Smith pursued were based on a common core of facts, and the relief sought by Gresham Smith under all three claims was co-extensive. The *G.T. Issa Construction* case is analogous to the case before us, and we cannot say the trial court abused its discretion in holding that, "[t]he time incurred relating to the alternate theories of relief based on a common core of facts was reasonably expended and properly included in GSP's fee application."

*Gresham, Smith and Partners v. Middleburg Real Estate Partners, LLC*, No. M2021-01459-COA-R3-CV, 2023 WL 6210983, at \*9, \*11 (Tenn. Ct. App. Sept. 25, 2023), *perm. app. dismissed Feb. 12, 2024*. In addition, Appellees cite *Jones v. Reda Homebuilders, Inc.*, No. M2020-00597-COA-R3-CV, 2021 WL 2375883, at \*6 (Tenn. Ct. App. June 10,

2021), *no appl. perm. appeal filed*, a case in which the trial court denied the appellants' motion for attorney's fees on grounds the court's judgment was for both breach of contract and negligence, and that attorney's fees were not supported by the facts as found and the causes of action alleged. We disagreed with the trial court on appeal, stating that "[u]nder the plain language of the parties' contract, as the prevailing party in the lawsuit, Appellants are entitled to their reasonable attorney's fees and costs." *Id.*

Under *Eberbach*, Tennessee courts lack discretion to deny a party attorney's fees if such fees are mandated by a valid and enforceable agreement. Here, the 2008 Agreement is a valid and enforceable agreement with an attorney's fee provision. FWA has, through this litigation, successfully enforced the 2008 Agreement. In their reply brief, Appellants argue that "FWA did not achieve *any* of the benefit it sought when it brought this lawsuit." We disagree. FWA obtained a judgment of $125,000.00. While the judgment is less than what FWA sought, it still constitutes success on a significant issue in the litigation and is at least a measure of the benefit FWA sought in bringing the lawsuit. Given that, FWA is the prevailing party, and it is entitled to an award of attorney's fees and costs pursuant to the 2008 Agreement.

While FWA is entitled to an award of attorney's fees, it was still incumbent upon FWA to prove an amount. In its fee application, FWA acknowledged that it "found it exceedingly difficult to provide any precise separation of the portions of fees incurred based upon the 2008 Contract. . . ." FWA proposed assessing one-third of its fees incurred in this action seeking to enforce its claims and one-half in defending the counterclaim and third-party complaint. However, FWA still failed to show these fees were incurred relative to the 2008 Agreement. The common core doctrine is of no help to FWA because its only basis for an award of attorney's fees and costs is the provision in the 2008 Agreement for enforcement of that particular contract. Therefore, the Trial Court committed no reversible error in denying FWA an award of attorney's fees and costs when FWA simply failed to prove the amount of damages. The Trial Court's decision not to award FWA its attorney's fees and costs was properly supported by the evidence in the record; was based on the most appropriate legal principles applicable to the decision; and was an acceptable alternative disposition. We affirm the Trial Court's denial of an award of attorney's fees and costs to FWA. Nevertheless, FWA has asked for an award of attorney's fees and costs incurred on appeal. As the prevailing party in enforcing the 2008 Agreement, FWA is entitled to an award of attorney's fees and costs incurred on appeal. On remand, the Trial Court is to determine and award FWA its reasonable attorney's fees and costs related to the enforcement of the 2008 Agreement incurred on appeal, provided FWA can prove them.

**Conclusion**

The judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellants, John R. Chilton, Centennial Village Apartments, LLC, and Centennial Village Development, LLC, and their surety, if any.


s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE